IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TERESE MARIE MEADOWS                                                                             PLAINTIFF
ADC #707979

v.                                          1:17cv00056-JM-JJV

MICHAEL RICHARDSON, Captain
of Security, McPherson Unit; *et al.*                                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

>  Clerk, United States District Court
>  Eastern District of Arkansas
>  600 West Capitol Avenue, Suite A149
>  Little Rock, AR 72201-3325

## **DISPOSITION**

**I.  INTRODUCTION**

Terese Marie Meadows ("Plaintiff") is a prisoner in the McPherson Unit of the Arkansas Department of Correction ("ADC.")  She has filed this *pro se* action, under 42 U.S.C. § 1983, alleging that from March to May 2017, Defendants Dr. Joseph Hughes, Director of Nursing Judy Baiza, and Medical Administrator Opal Bledsoe failed to provide her with constitutionally adequate medical care for chronic back, hip, shoulder, and knee pain.[1]  (Doc. No. 8.)  She seeks monetary damages, as well as injunctive and declaratory relief.  (*Id.*)

Defendants have filed a Motion for Summary Judgment, contending they are entitled to judgment as a matter of law.  (Doc. Nos. 71-73.)  Plaintiff has not filed a Response.  Thus, the matter is now ripe for a decision.  After careful review, and for the following reasons, I find Defendants' Motion for Summary Judgment should be GRANTED, and Plaintiff's inadequate medical care claim against Defendants Hughes, Baiza, and Bledsoe should be DISMISSED with prejudice.

---

[1] All other claims raised in the Complaint have been previously dismissed without prejudice.  (Doc. Nos. 15, 56.)

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in her favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.     FACTS

The facts viewed in the light most favorable to Plaintiff, and taken mostly from her medical records and deposition, are as follows.  (Doc. Nos. 71-2, 72-2, 72-3.)  Plaintiff has a complicated

medical history.² However, this case is limited to the medical care she received, from March to May 2017, for chronic pain in her back, shoulders, hips, and knees. (Doc. Nos. 53, 56.)

On March 13, 2017, Dr. Hughes prescribed 50 mg of Tramadol and 50 mg of Nortriptyline, each twice a day, to treat Plaintiff's chronic pain. (Doc. No. 72-2 at 3-4.) On March 31, 2017, he increased the Tramadol to 100 mg twice a day at Plaintiff's request. (*Id.* at 23). On April 17 and 21, 2017, Dr. Hughes gradually reduced the Tramadol prescription to 50 mg three times a day and then to twice a day and denied Plaintiff's request for Hydrocodone because both medications were contraindicated by her liver condition. (Doc. No. 72-2 at 30-35.) Dr. Hughes offset the Tramadol reduction by increasing Plaintiff's Nortriptyline to 75 mg twice a day. *Id.* However, he later discontinued Nortriptyline because Plaintiff said it was not working and was interfering with Effexor, which was prescribed by her psychiatrist for treatment of depression. (*Id.*; Doc. No. 72-3 at 59-60, 70.) Dr. Hughes explained to Plaintiff that Effexor might reduce her pain, and he encouraged Plaintiff to lose weight, walk more, and sit less in her wheelchair. (Doc. No. 72-2 at 30-35.)

While waiting for her April 21, 2017, appointment with Dr. Hughes, Plaintiff asked Director of Nursing Baiza and Medical Administrator Bledsoe if she could lie down because her back was hurting. (Doc. Nos. 48-3 at 15-18; 72-3 at 40-56.) They denied her request because there were no open beds in the infirmary, Plaintiff did not have a long wait for her examination, and she

---

² Plaintiff, who is fifty-nine years old, has type two insulin dependent diabetes; hepatitis C; cirrhosis of the liver; esophageal varices; arthritis in her shoulders, lower back, and knees; sacroiliac joint syndrome; and hypertension. (Doc. Nos. 72-1 at 65-86; 72-2 at 39; 72-3 at 15-22, 35.) Plaintiff has received two knee replacement surgeries, and she uses a wheelchair to ambulate. (*Id.*) In early March 2017, she was hospitalized for a urinary tract infection with possible sepsis and internal bleeding from a ruptured esophageal varix, which was surgically corrected. (*Id.*) Due to her complex medical issues, Plaintiff does not have a job assignment in prison. (Doc. 72-3 at 33.)

did not have a medical script authorizing her to lie down.[3]  (*Id.*)

On April 25, 2017, Dr. Hughes saw Plaintiff in the prison infirmary in response to her complaints of back pain.  (Doc. No. 72-2 at 39-40.)  He explained to Plaintiff that she could not take NSAIDs for pain because of her liver issues and that he was "researching for a pain med that she can take and not be hard on her liver." (*Id.* at 40.)   Dr. Hughes then issued a script allowing Plaintiff to "lay down as needed;" ordered x-rays of Plaintiff's lumbar spine, sacroiliac joints, shoulder, knees, and hips; continued her prescription for 50 mg of Tramadol to be taken two times a day; and gave her a one-time dose of 100 mg of Tramadol.  (*Id.*)

On May 3, 2017, Plaintiff returned to the infirmary with complaints that her pain medication was not working.  (*Id.*)   Dr. Hughes ordered a one-time, 8 mg shot of Decadron and explained to Plaintiff that he would follow-up when the radiology reports were completed.  (*Id.*)

On or about May 12, 2017, Plaintiff went to the infirmary seeking treatment for leg and back pain.  (Doc. No. 48-3 at 38-51.)   After waiting approximately thirty minutes, Plaintiff asked if she could lie down.  (*Id.*)  Defendants Bledsoe and Baiza denied that request because they interpreted Dr. Hughes's script as allowing Plaintiff to lie down in her barracks as needed, but not while waiting in the infirmary.  (*Id.*)  On May 16, 2017, Defendant Baiza spoke with Dr. Hughes, verified that his script authorized Plaintiff to lie down as needed "while in the barracks only [and] not while in medical," and changed the script to more clearly state Dr. Hughes's instructions.  (Doc. No. 72-2 at 50.)  The next day, on May 17, 2017, Dr. Hughes reviewed the x-rays with Plaintiff and explained that she had "old" arthritic compressions in her lumbar spine, mild degenerative

---

[3] In his April 21, 2017 progress notes, Dr. Hughes recorded that he "offered to give her [Plaintiff] a script to be able to lay down during the day." (Doc. No. 72-2 at 35.)  But, there is no indication in the medical records that he actually issued a script on that day.

joint disease in her shoulder, a normal sacroiliac joint, and an intact knee arthroplasty.[4]  (Doc. No. 72-2 at 41-44, 51.)  He then continued her Tramadol prescription for 50 mg to be taken twice a day. (*Id.*)

IV.     **ANALYSIS**

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).  To avoid summary judgment and proceed to trial on her Eighth Amendment claim, Plaintiff must have evidence that: (1) she had an objectively serious need for medical care for pain in her back, hips, shoulders, and knees; and (2) Defendants Hughes, Baiza, and Bledsoe subjectively knew of, but deliberately disregarded that serious medical need.  *See Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).  Because Defendants do not challenge the first element, the second element is the crux of this case.  Deliberate indifference, which goes well beyond medical malpractice or even gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).  In other words, an "inmate must demonstrate that a prison [medical provider's] actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014).  After carefully reviewing the record, I conclude Plaintiff has failed to produce any such evidence.

To the contrary, it is undisputed that Dr. Hughes: (1) prescribed a variety of medications which he determined, in his professional medical opinion, were appropriate to treat Plaintiff's pain given her complicated medical history; (2) ordered x-rays, which showed no acute injuries

---

[4] During her deposition, Plaintiff testified that she believed the artificial stabilizer in her replaced knee was "shattered."  (Doc. No. 72-3 at 63-64).  However, the radiological report states "the prosthesis is properly situated without any loosening."  (Doc. No. 72-2 at 43.)

necessitating further care; and (3) issued a script authorizing Plaintiff to lie down as needed in the barracks. *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

Plaintiff believes Dr. Hughes was deliberately indifferent because he denied her request for stronger pain medication, failed to order MRI's and bone scans, and did not refer her to an orthopedic specialist. (Doc. No. 72-3 at 59-78.) However, "inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Saylor,* 812 F.3d at 646; *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (holding that "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and not "cruel and unusual punishment"). More importantly, Defendants' medical expert concludes the course of care rendered by Dr. Hughes was medically appropriate and resulted in no harm to Plaintiff.[5] (Doc. No. 72-4). "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Reid v. Griffin*, 808 F.3d 1191, 1193 (8th Cir. 2015); *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010). Instead, Plaintiff must present evidence demonstrating the "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2014). She has not done so.

Plaintiff also alleges Dr. Hughes was deliberately indifferent because he waited, from

---

[5] Defendants rely on the sworn affidavit of Dr. Jeffrey Stieve, M.D., who is the Regional Medical Director for Correct Care Solutions. (Doc. No. 72-4.)

7

May 2 to 17, 2017, to review the x-rays and radiological reports with her. (Doc. Nos. 72-2 at 45; 72-3 at 27-30, 70-71.) The grievance records about this matter state Dr. Hughes did not do so sooner because he was on vacation, which is not deliberate indifference. (Doc. No. 48-3 at 27-30.) And, to avoid summary judgment, Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016); *Gibson v. Weber*, 433 F.3d 642, 646-47 (8th Cir. 2006). The x-rays did not reveal any acute or new injuries warranting immediate treatment, and Defendants' expert concludes Plaintiff suffered no injury as a result of any delay in reviewing those results. (Doc. No. 72-4.) Accordingly, I conclude Dr. Hughes is entitled to summary judgment.

Plaintiff claims Defendants Bledsoe and Baiza were deliberately indifferent to her serious medical needs when they refused to let her lie down while waiting in the infirmary on April 21 and May 12, 2017. However, as previously discussed, Plaintiff did not have a script authorizing her to do so until April 25, 2017, and the script Dr. Hughes issued on that day, although ambiguously worded, only allowed Plaintiff to lie down while in the barracks. Plaintiff's disagreement with Dr. Hughes's decision, which is supported by Dr. Stieve's expert opinion that Plaintiff did not need to lie down while waiting in the infirmary, does not constitute deliberate indifference. (Doc. No. 72-4.)

I am not unsympathetic to Plaintiff's serious medical conditions and the pain she endures as a result thereof. However, the record before the Court demonstrates Defendants are treating her pain "in a reasonable and sensible manner." *See Fourte,* 746 F.3d at 390. To proceed to trial on her Eighth Amendment claim, Plaintiff must have evidence from which a reasonable fact finder could conclude Defendants acted with subjective, deliberate indifference to her medical needs.

*See Helmig v. Fowler*, 828 F.3d 755, 763 (8th Cir. 2016). Because there is no such evidence, I recommend Defendants' Motion for Summary Judgment be granted and Plaintiff's inadequate medical care claim against Defendants Hughes, Baiza, and Bledsoe be dismissed with prejudice.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 71) be GRANTED.

2. Plaintiff's inadequate medical care claim against Defendants Hughes, Baiza, and Bledsoe be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 16th day of November, 2018.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE